UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM MIDDLETON, | } |
| Plaintiff, | } |
| v. | } Case No.: 5:15-cv-01076-RDP-HGD |
| MICHAEL MILLER, | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on the Magistrate Judge's Report and Recommendation (Doc. # 16) and the Defendant's Response to Court's Order (Doc. # 23). The court directed Defendant Michael Miller ("Defendant") to appear and respond to the Magistrate Judge's recommendation against dismissing Plaintiff's 42 U.S.C. § 1983 claim for an unlawful seizure of a urine sample. (Doc. # 18 at 2). Defendant argues that the court should overrule the Magistrate Judge's recommendation because he is entitled to qualified immunity for the unlawful-seizure claim. (Doc. # 23 at 5). The court has granted Plaintiff an opportunity to respond to Defendant's assertion of qualified immunity; no response has been filed. (Doc. # 18 at 2). After careful review, and for the reasons explained below, the court concludes Defendant is due to be granted qualified immunity for the unlawful-seizure claim because Plaintiff's allegations about the seizure do not present a violation of clearly established law.

**I.  Background Facts and Procedural History**

In his Amended Complaint, Plaintiff has alleged, among other charges, that Defendant violated his Fourth Amendment rights by performing an unreasonable search or seizure. (*See*

Doc. # 12-1 at 8-9) (claiming that Defendant directed others to unlawfully seize a sample). Plaintiff alleges that Defendant, an officer employed by the Russellville Police Department, arrested him around midnight on October 26, 2013 following an auto accident. (*Id.* at 7). Defendant did not transport Plaintiff to a hospital, despite Plaintiff's complaints of back and neck injuries. (*Id.* at 8). Instead, Defendant transported Plaintiff to a jail. (*Id.*). Plaintiff remained at the jail for two or three hours before losing consciousness. (*Id.* at 11). After Plaintiff lost consciousness, he was transported to a Russellville hospital. (*Id.* at 8).

Defendant allegedly directed two hospital employees, Peggy Williams and Kellon White, to obtain a urine sample from Plaintiff so that a drug test could be performed. (*Id.*). Williams and White then told Plaintiff that they would forcibly obtain a urine sample from him unless he peed into a jar. (*Id.*). The amended complaint does not assert that Defendant obtained a warrant for the seizure before instructing the hospital staff to get a urine sample.

The Magistrate Judge determined that Plaintiff's allegations of an unlawful seizure stated a claim for relief against Defendant. (Doc. # 16 at 9-15). He noted that a warrantless seizure is *per se* unreasonable unless justified by a specifically established and delineated exception to the Fourth Amendment's warrant requirement. (*Id.* at 9). The Magistrate Judge found that Plaintiff did not voluntarily consent to the seizure. (*Id.* at 12). Moreover, he found that exigent circumstances did not justify the seizure because Defendant could have sought a warrant during the two or three hours that Plaintiff allegedly spent in jail before travelling to the hospital. (*Id.* at 13-14).

The court raised some concerns about Plaintiff's unlawful-seizure claim against Defendant when it partially adopted the Magistrate Judge's Report and Recommendation. (*See* Doc. # 17 at 5-7). The court queried whether Defendant could have timely obtained a warrant to

seize evidence from Plaintiff at the time the seizure occurred. (*Id.* at 6). Because some of the claims against Defendant survived the court's initial screening, the court decided to allow Defendant to respond to the unlawful-seizure claim. (*Id.* at 6).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed.[1] *Twombly*, 550 U.S. at 570.

A qualified immunity defense can be reviewed at the Rule 12(b)(6) stage of litigation. *Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007). Indeed, the Supreme Court has recognized that a plaintiff must allege a "violation of clearly established law" before he or she is entitled to discovery from a defendant eligible for qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). *See also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right.").

### III. Analysis of Plaintiff's Unreasonable-Seizure Claim

Defendant provides two grounds on which the court could find that the warrantless urine seizure did not violate clearly established law. First, Defendant contends that the seizure could have been justified by exigent circumstances under binding precedent existing in October 2013.

---

[1] The court recognizes that the heightened pleading standard formerly applied by the Eleventh Circuit to Section 1983 cases where a defendant could assert qualified immunity no longer applies after *Iqbal*. *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

(Doc. # 23 at 9-16). Second, he claims that the seizure could have been justified as a search incident to a lawful arrest. (*Id.* at 17-24). The court determines that a reasonable officer could have conducted the alleged warrantless seizure based on exigent circumstances.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court assesses whether a defendant is entitled to qualified immunity by engaging in a three-step analysis. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on the official claiming qualified immunity to establish that he or she was acting within his or her discretionary authority. *Id.* Here, it cannot reasonably be disputed that Defendant Miller, a police officer, acted within his discretionary authority by seizing evidence to further a criminal investigation. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1323-24 (11th Cir. 1997) (recognizing the lack of any dispute about whether a police officer acted within her discretionary authority by applying for and executing a search warrant). Once the official makes the initial showing, the burden shifts to a plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Skop*, 485 F.3d at 1137. Finally, "the plaintiff must show that the violation was 'clearly established.'" *Id.*; *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state.") (citing *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1032-33 n. 10 (11th Cir. 2001) (*en banc*)).

It is well settled that a seizure of personal property generally is unreasonable under the Fourth Amendment unless the seizing officer obtains a judicial warrant for the search. *Gennusa v. Canova*, 748 F.3d 1103, 1114-15 (11th Cir. 2014). Of course, there are limited exceptions to the warrant requirement. *Id.* at 1115. The exigent circumstances exception allows an officer to seize evidence without a warrant when it is necessary to prevent the imminent destruction of that evidence. *Id.* The court considers the totality of the circumstances when determining whether an officer justifiably acted without a warrant. *Id.*

The Magistrate Judge properly identified *Schmerber v. California*, 384 U.S. 757 (1966), as the precedent most relevant to the alleged seizure. (Doc. # 16 at 13-15). In *Schmerber*, the defendant was arrested at a hospital while receiving treatment for injuries he suffered during an accident. 384 U.S. at 758. A police officer obtained a blood sample from the defendant after the defendant refused to consent to the seizure of the sample. *Id.* at 758-59. The Supreme Court held that the warrantless seizure of the defendant's blood was justified by exigent circumstances under the facts of the case. *Id.* at 770-71. As the Court explained,

> The officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant.

*Id.* (internal citations and quotation marks omitted).

The Supreme Court again addressed warrantless blood tests in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). In *McNeely*, the defendant was arrested at approximately 2:00 a.m. after the arresting officer smelled alcohol in his breath, the defendant performed poorly in field sobriety tests, and the defendant refused to consent to a breathalyzer test. 133 S. Ct. at 1556-57. The

6

officer transported McNeely to a hospital when he indicated that he would not consent to a breathalyzer test. *Id.* at 1557. After McNeely refused to consent to the seizure of a blood sample, the officer directed a hospital employee to take the sample. *Id.* The Supreme Court affirmed the Missouri courts' suppression of the defendant's blood test. *Id.* at 1558. Significantly, it declined to adopt a *per se* rule that the dissipation of alcohol in an individual's blood always provides an exigency to justify a warrantless seizure of a driver's blood. *Id.* at 1558, 1560-63. The Court recognized, though, that "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Id.* at 1563.

> Other factors present in an ordinary traffic stop, such as the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search. The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.

*Id.* at 1568.

The *McNeely* opinion recounted that the state had not presented circumstances besides the dissipation of alcohol to explain why the arresting officer could not obtain a warrant. *Id.* at 1567. Specifically, the arresting officer testified that a prosecutor would have been available to apply for a warrant and that "he had no reason to believe that a magistrate judge would have been unavailable." *Id.* Because the record did not provide "an adequate analytic framework for a detailed discussion of all the relevant factors," the Supreme Court affirmed the Missouri courts' suppression of the blood test. *Id.* at 1568.

Here, Plaintiff has not pled that Defendant violated clearly established law by obtaining a urine sample from him without a warrant. This is so because (1) Plaintiff's own allegations

7

regarding his conduct sufficiently establish arguable probable cause to believe that he was driving under the influence (*see* Doc. # 16 at 13), and (2) a reasonable officer could have believed that the warrantless seizure was justified by exigent circumstances. As in *Schmerber*, Plaintiff was involved in an accident that could have delayed Defendant's ability to obtain a timely warrant. (*See* Doc. # 12-1 at 4) (explaining that Plaintiff's vehicle flipped four or five times and hit a light pole). *See also Schmerber*, 384 U.S. at 771. Moreover, Defendant's ability to obtain a warrant was impeded because Plaintiff needed to be transported to a hospital. (*See* Doc. # 12-1 at 7-8) (explaining that Plaintiff suffered back and neck pains following the accident and eventually lost consciousness). *See also Schmerber*, 384 U.S. at 770-71. These factors, when considered with the expected dissipation of alcohol in Plaintiff's body, could have led a reasonable officer to conclude that exigent circumstances justified a warrantless seizure of urine to test for alcohol. *See Schmerber*, 384 U.S. at 770-71. Nothing in *Schmerber* or *McNeely* would have put a reasonable officer on notice that the warrantless seizure alleged in Plaintiff's amended complaint was unjustified due to a lack of exigent circumstances. For this reason, Plaintiff's unlawful-seizure claim against Defendant does not allege a violation of clearly established law, and Defendant is entitled to qualified immunity for that claim.[2]

## IV. Conclusion

For the reasons explained above, Section III(A)(3)(a) of the Magistrate Judge's Report and Recommendation is due to be overruled. To the extent that Count VII of the amended complaint alleges a Section 1983 claim against Defendant, the claim is due to be dismissed. An order consistent with this memorandum opinion will be entered.

---

[2] The court notes that it already has granted Plaintiff an opportunity to amend the complaint. (Doc. # 13). The court need not address -- and does not address -- whether the warrantless seizure could be justified as a search incident to arrest.

**DONE** and **ORDERED** this May 17, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE