FILED
2017 Dec-06 AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM LITTLETON, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:15-cv-01076-RDP |
| } | |
| MICHAEL MILLER, } | |
| } | |
| Defendant. } | |

## **MEMORANDUM OPINION**

This case is before the court on Defendant's Special Report (Doc. # 27), which the court has converted to a motion for summary judgment (Doc. # 29), and Defendant's Motion for Leave to Engage in Limited Discovery (Doc. # 30). The motion for summary judgment has been fully briefed and is under submission. (Docs. # 31, 34).

**I.     Factual and Procedural Background**

The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be disputed or undisputed and the court's own examination of the evidentiary record, including the sworn averments in Plaintiff's Amended Complaint. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Notably, the Rule 56 record contains video footage from two dash cameras in the patrol cars used by Defendant, then a patrol officer with the City of Russellville Police Department, and Brian Shackelford, a lieutenant with the Russellville Police Department. Where video evidence is available and obviously contradicts Plaintiff's version of the facts, the court must accept the video's depiction instead of Plaintiff's subjective account. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010). To be sure, the dash camera videos in the Rule 56 record do not offer an uninterrupted view of Plaintiff's arrest and detainment. Indeed, the videos do not show when officers tasered Plaintiff or other interactions between the officers and Plaintiff for which recorded audio is available. And, the video clips submitted by Defendant are not a continuous record of Defendant's dash camera footage from October 26, 2013.[1] Nevertheless, as discussed below, the video evidence in the Rule 56 record definitively contradicts vital allegations in the Amended Complaint.

a. **Factual Background**

Around midnight on October 26, 2013, Defendant observed a vehicle driving the wrong way on Highway 43. (Doc. # 27-1 at 2-3). The vehicle then made an illegal U-turn. (*Id.* at 3). Defendant turned on his siren and chased the vehicle onto South Washington Avenue in Russellville. (*Id.*). Then, the vehicle lost control and crashed, rolling several times. (*Id.*). When Defendant arrived at the scene of the accident, downed power lines blocked the road. (Doc. # 28, Miller Dash Cam Video, at 01:03:35). The vehicle lay upside down off the road. (*Id.* at

---

[1] Plaintiff argues that the video footage should be disregarded because of a discrepancy in the time stamps displayed in Defendant's dash camera footage and Shackelford's dash camera footage. (Doc. # 31 at 4). The court finds that the discrepancy between the time stamps is not a material fact in this case, given the undisputed footage that shows Defendant's response to Plaintiff's medical needs. *Cf. Reese v. Herbert*, 527 F.3d 1253, 1257 n. 1 (11th Cir. 2008) (disregarding a discrepancy between the time stamps in submitted video footage from two patrol cars where the actual time an event occurred had little significance). Here, the actual time of the events, and the fact that the video footage was taken by dash cameras displaying different time stamps, is not material.

01:04:06). As he observed the accident, Defendant asked a dispatcher to send an ambulance to the scene. (*Id.* at 01:03:54).

As Defendant parked his patrol car by the vehicle, a man -- identified as Plaintiff by Defendant -- fled from the vehicle on foot. (*Id.* at 01:04:06-01:04:08; Doc. # 27-1 at 4). Defendant pursued Plaintiff across a field. (Doc. # 27-1 at 4). Shackelford observed Plaintiff cross Gaines Street as he tried to cut off Plaintiff's escape route with his patrol vehicle. (Doc. # 27-2 at 2-3; Doc. # 28, Shackelford Dash Cam Video, at 00:11:29-00:11:30). Defendant and Shackelford both continued to chase Plaintiff. (Doc. # 27-2 at 3). When the chase ended, Shackelford used a taser to help subdue Plaintiff.[2] (*Id.*). Defendant observed that Plaintiff showed signs of intoxication. (Doc. # 27-1 at 16). "Littleton had a very strong odor of alcoholic beverage coming from his person. He had a lot of trouble keeping his balance and fell to his knees at one point. Littleton was slurring his speech so heavily that I could barely understand what he was saying." (*Id.*).

The officers handcuffed Plaintiff and moved him to Shackelford's patrol vehicle.[3] (*Id.* at 6). They placed Plaintiff in Shackelford's patrol vehicle until an ambulance arrived at the scene. (*Id.*). (*See also* Doc. # 28, Shackelford Dash Cam Video, at 00:20:45) (showing Plaintiff lying down in Shackelford's patrol vehicle). During an interview, Plaintiff admitted to having used cocaine before the accident. (Doc. # 27-1 at 6). Plaintiff also told Defendant that he was suffering from back and neck pain. (Doc. # 12-1 at 4). When medical personnel arrived at the

---

[2] In his Amended Complaint, which Plaintiff swore to under penalty of perjury, he asserts that Defendant tasered him at the scene of the accident and pulled him from the vehicle. (Doc. # 12-1 at 4, 11). The court grants no credence to Plaintiff's statement that Defendant tasered him at the scene of the accident because the dash cam video clearly shows that Plaintiff fled the scene of the accident on foot before Defendant exited his patrol vehicle. (Doc. # 28, Miller Dash Cam Video, at 01:04:08). *See also Pourmoghani-Esfahani*, 625 F.3d at 1315.

[3] Plaintiff's Amended Complaint contains no account of what occurred between the use of a taser against him and Defendant's transport of him away from the accident. (*See* Doc. # 12-1 at 4). As explained above, the court cannot credit his averment that Defendant pulled him away from the wrecked vehicle because video evidence reveals that Plaintiff fled the accident scene on foot.

scene, Defendant retrieved his patrol vehicle and drove over to Shackelford's patrol vehicle. (Doc. # 27-1 at 6). (*See also* Doc. # 28, Miller Dash Cam Video, at 01:15:20-01:16-05) (video of Defendant driving away from the scene of the accident). The medical personnel removed the taser's prongs from Plaintiff's skin. (Doc. # 27-1 at 6).

Defendant placed Plaintiff inside of his patrol vehicle. (Doc. # 28, Miller Dash Cam Video, at 01:21:05-01:21:10). As Defendant departed the scene, he told a dispatcher that he was "en route to the ER." (*Id.* at 01:22:18-01:22:19). He drove from Gaines Street to Russellville Hospital and a video recording of that entire drive is in the Rule 56 record. (*Id.* at 01:22:18-01:27:00). The video shows that Defendant travelled to Russellville Hospital without stopping at any police station. (*See id.*). Defendant helped Plaintiff exit the vehicle (*id.* at 01:28:00-01:28:10) and walked him into Russellville Hospital. (*Id.* at 01:29:00). Defendant informed hospital personnel that Plaintiff needed to be checked out, that he was suspected of driving while impaired, that he had totaled his vehicle, and that Defendant wanted blood tests to be performed. (*Id.* at 01:29:14-01:29:25).

According to a Russellville Police Department arrest report, Plaintiff was arrested by Defendant at 12:22 a.m. on October 26, 2013. (Doc. # 27-1 at 20-21). Russellville's dispatch records indicate that Defendant began travelling to the police department at 2:53 a.m. (*Id.* at 27). Defendant did not book Plaintiff until 3:34 a.m. that day. (*Id.* at 21).

      b.      **Procedural Background**

After an initial review of Plaintiff's Amended Complaint, the court identified two plausibly pled claims:

> Plaintiff alleges that Defendant acted with deliberate indifference by denying him access to medical attention for the serious medical conditions he suffered after his automobile accident on October 26, 2013. Specifically, Defendant failed to transport Plaintiff to a hospital despite his complaints of back and neck pain.

4

> Plaintiff was taken to a jail and held there for two to three hours until he lost consciousness. At that point, Plaintiff was taken to a hospital.
>
> Plaintiff also alleges that Defendant used excessive force against him at the scene of the accident. Specifically, Plaintiff claims that Defendant used a taser against him when he was clearly incoherent after the accident. The taser caused unnecessary and needless pain.

(Doc. # 26 at 1). The court instructed Defendant to review Plaintiff's claims and file "a written report to the court presenting the sworn statement of all persons having knowledge of the facts relevant to the claims or any subsequent investigation undertaken with respect to the claims." (*Id.* at 2). It further directed Defendant to provide certain evidence to the court, including "[a] clear and legible copy of all documents relevant to the claims or defenses asserted in the action, including all incident reports, disciplinary reports, classification or custody records, and medical records, as may bear directly on the claims or defenses asserted." (*Id.* at 2-3).

In July 2017, Defendant filed a special report that contained his sworn statement, Shackelford's sworn statement, an incident report, an arrest report, two "Response to Aggression/Resistance" forms, and a dispatch log entry. (Docs. # 27-1 & 27-2). Defendant also filed video clips from the dash cameras of his patrol vehicle and Shackelford's patrol vehicle. (Doc. # 28). Plaintiff argues that Defendant has failed to comply with the court's special report order because he has not filed the medical records produced by the medical personnel at the scene or the medical records from Russellville Hospital. (Doc. # 31 at 6). That argument is off the mark. Nothing before the court indicates that Defendant possesses or controls those medical records, so he cannot be held responsible for failing to produce them. *See White v. Parrish*, 2013 WL 3357853, at *6 (M.D. Ala. July 3, 2013) (concluding that a plaintiff "cannot be heard to complaint about the defendants' failure to produce videos which are not in their possession, custody, or control").

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson*

teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III. Analysis**

After careful review, and for the reasons explained below, the court concludes that Defendant is entitled to summary judgment on both claims discussed in Defendant's special report.

**A. Plaintiff Has Expressly Abandoned Any Excessive Force Claim**

Plaintiff's Amended Complaint alleges that Defendant used excessive force against him by tasering him. (Doc. # 12-1 at 9). In his response to the special report, however, Plaintiff states that he "has not alleged an excessive force claim as asserted by the defendant in his special report." (Doc. # 31 at 9). The court construes this as an express abandonment of any excessive force claim against Defendant. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Therefore, Defendant is entitled to summary judgment on the excessive force claim raised against him.

**B. The Rule 56 Record Demonstrates that Defendant Did Not Disregard Plaintiff's Medical Condition Following the Accident**

Plaintiff's Amended Complaint also contains a deliberate indifference claim premised on Defendant's alleged failure to transport Plaintiff to a hospital until after he took Plaintiff to the Russellville Police Department. (Doc. # 12-1 at 3-4) (Count I of the Amended Complaint). Defendant requests qualified immunity from this deliberate indifference claim because (1) he requested medical assistance for Plaintiff when he observed the accident scene, (2) Plaintiff displayed no obvious medical distress when he fled the vehicle, and (3) Defendant transported Plaintiff to the emergency room immediately after the arrest. (Doc. # 27 at 15-18).

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether a defendant is entitled to qualified immunity is determined by engaging in a three-step analysis. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on an official claiming qualified immunity to establish that he or she was acting within his or her discretionary authority. *Id.* Here, Plaintiff has not disputed Defendant's claim that he acted within the scope of his discretionary authority. (*See* Doc. # 31 at 10).

Once the discretionary-authority showing is made, the burden shifts to a plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Skop*, 485 F.3d at 1137. Finally, "the plaintiff must show that the violation was 'clearly established.'" *Id.*; *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state.") (citing *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1032-33 n. 10 (11th Cir. 2001) (en banc)). "There are three ways in which [a plaintiff] may show that the right violated was clearly established: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Perez v. Suszcynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)). If a defendant can establish that he is entitled to qualified

immunity, then the federal, individual capacity claims will be dismissed.[4] *See Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010).

The Eighth Amendment prohibits cruel and unusual punishment, which includes deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Claims of deliberate indifference to serious medical needs arise under the Eighth Amendment when the claimant is a convicted prisoner. However, when a § 1983 plaintiff is a pre-trial detainee, the claim must be asserted under the Fourteenth Amendment. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). In any event, the minimum standard required by the Fourteenth Amendment for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment in the case of a convicted prisoner, so courts analyze these claims in the same manner. *Id*. *See also Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017).

"Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (citing *Carswell v. Bay Cty.*, 854 F.2d 454, 457 (11th Cir. 1988); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)), *abrogated in part on other grounds by Richardson v. Knight*, 521 U.S. 399 (1997). However, not every claim of inadequate medical treatment states a cognizable claim under the Constitution. *Id*. at 1543. "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

---

[4] The Eleventh Circuit has explained that clearly established law can be more difficult to discern in deliberate indifference claims due to the variety of possible factual scenarios that may be presented in different cases. "Questions of deliberate indifference to medical needs based on claims of delay are complicated questions because the answer is tied to the combination of many facts; a change in even one fact from a precedent may be significant enough to make it debatable among objectively reasonable officers whether the precedent might not control in the circumstances later facing an officer." *Pourmoghani-Esfahani*, 625 F.3d at 1318.

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotation marks and citation omitted) (Eighth Amendment case). To establish that an official was deliberately indifferent to his serious medical need, a pretrial detainee must meet both an objective and a subjective standard of proof.[5] *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

To establish the objective component, a detainee is required to show both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and that the response by the official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted). Nevertheless, "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." *Burnette*, 533 F.3d at 1333.

To establish the subjective component of a deliberate indifference claim, a detainee must establish three factors: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) that the conduct complained of is more than merely negligent. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). "An official disregards a serious risk by more than mere negligence when he or she knows that an inmate is in serious need of medical care, but he or she fails or refuses to obtain medical treatment for the inmate." *Dang*, 871 F.3d at 1280 (internal

---

[5] The Eleventh Circuit has established that the same standard applied to Eighth Amendment deliberate indifference claims applies to Fourteenth Amendment deliberate indifference claims made by pretrial detainees. *Burnette v. Taylor*, 533 F.3d 1325, 1330 n. 4 (11th Cir. 2008). Moreover, our Circuit has consistently required that subjective and objective standards must be met in order to establish a deliberate indifference claim, and this has not changed following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). *See Dang*, 871 F.3d at 1279 & n. 2; *Howell v. Unnamed Defendant*, 672 F. App'x 953, 955 (11th Cir. 2016); *Lindley v. Birmingham, City of Ala.*, 652 F. App'x 801, 805-06 (11th Cir. 2016). The court is bound to apply the law as stated by the Supreme Court and the Eleventh Circuit. *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997).

quotation marks and citation omitted). The required subjective elements of a deliberate indifference claim ensure that "mere[ ] accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under § 1983. *Taylor*, 221 F.3d at 1258 (internal quotation marks omitted). In "delay in treatment" cases, even when treatment is ultimately provided, deliberate indifference may be "inferred from an unexplained delay in treating a known or obvious serious medical condition." *Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994).

The Eleventh Circuit considered a similar claim of deliberate indifference premised on delayed access to health care in *Pourmoghani-Esfahani*. There, an officer had a physical alternation with a detainee where she flipped the detainee to the ground and slammed the detainee's head to the floor seven or eight times. *Pourmoghani-Esfahani*, 625 F.3d at 1316. A jail nurse examined the detainee approximately two minutes after she had been placed in a cell. *Id.* The officer observed the detainee five minutes later. *Id.* The detainee's cellmate got another officer's attention after approximately four minutes, and the nurse returned to check on the detainee two minutes thereafter. *Id.* The detainee received ongoing medical care for symptoms of an overdose and a seizure and was transported to a hospital. *Id.*

While the Eleventh Circuit affirmed a denial of qualified immunity to the officer on an excessive force claim, *id.* at 1317, it held that the officer was entitled to qualified immunity on a deliberate indifference claim. *Id.* at 1317-19. It explained that the delay of a few minutes in providing care was insufficient to support a deliberate indifference claim where the officer had been informed by a nurse that the detainee had a possible nose injury, rather than a medical emergency. *Id.* at 1318. The court rejected the detainee's argument that the officer should have sent her to a hospital immediately after slamming her face against the pavement because the

officer was not aware of a medical need that required a more drastic intervention than an examination. *Id.* Moreover, when officers in the jail became aware of the detainee's medical needs, a nurse began providing medical care in minutes, a "delay" that the court practically disregarded. *See id.* (citing deliberate indifference claims premised on a delay in treatment where the inmates went without care for a few hours). Alternatively, the *Pourmoghani-Esfahani* opinion held that the officer was entitled to qualified immunity based on the lack of clearly established law to support the proposition that a two to five minute delay in medical care constituted a constitutional violation. *Id.* at 1318-19.

Here, Defendant is entitled to summary judgment on Plaintiff's deliberate indifference claim because Defendant did not disregard Plaintiff's medical conditions as alleged in the Amended Complaint.[6] Indeed, the submitted video evidence shows that Defendant asked for medical personnel to travel to the scene when he witnessed the severity of the accident. (Doc. # 28, Miller Dash Cam Video, at 01:03:54). Medical personnel came to the scene and examined Plaintiff after his arrest. (Doc. # 27-1 at 6). And, Defendant transported Plaintiff from the arrest site to Russellville Hospital without stopping at the police station. (Doc. # 28, Miller Dash Cam Video, at 01:22:18-01:27:00). Simply put, the video evidence in the Rule 56 record contradicts Plaintiff's allegation that Defendant failed or refused to obtain medical care for him. *Cf. Dang*, 871 F.3d at 1280. To the extent Defendant's conduct "delayed" Plaintiff's receipt of medical care, he only delayed the provision of medical care for minutes, and such a delay does not give rise to a constitutional claim. *See Pourmoghani-Esfahani*, 625 F.3d at 1318. Alternatively, even

---

[6] The court need not decide -- and does not decide -- whether Defendant subjectively realized that Plaintiff was suffering from a serious medical condition requiring immediate medical assistance after the accident. Although the Eleventh Circuit has held that an arrestee's symptoms of intoxication do not always present a serious medical condition, *Burnette*, 533 F.3d at 1333, and Plaintiff's generalized complaints of back and neck pain do not indicate that he reported severe pain to Defendant following the arrest (Doc. # 12-1 at 4), Defendant certainly recognized that the accident could have caused serious injuries. Indeed, he immediately called for an ambulance when he observed the accident (Doc. # 28, Miller Dash Cam Video, at 01:03:54) and transported Plaintiff straight from the arrest scene to a hospital after medical personnel examined Plaintiff at the scene.

if a minutes-long delay in provision of medical care gave rise to a constitutional deliberate indifference claim (and it does not), Defendant is entitled to qualified immunity from such a claim because no clearly established law would have put him on notice of any § 1983 liability where he observed a serious accident, immediately requested medical assistance, witnessed a suspect flee from the accident site, and transported the suspect to a hospital after allowing medical personnel to examine the suspect.[7]  *See id.* at 1318-19.

Plaintiff argues that summary judgment should be denied because Defendant gave a different account of the arrest during a revocation hearing in April 2014. (Doc. # 31 at 8). This argument creates no dispute of fact, though, because Plaintiff has proffered no transcript of the revocation hearing or any sworn testimony about the hearing. Therefore, Defendant is due to be granted summary judgment on Plaintiff's deliberate indifference claim.

## IV.  Conclusion

For the reasons explained above, Defendant's motion for summary judgment (Doc. # 27) is due to be granted. Accordingly, Defendant's motion for leave to engage in limited discovery (Doc. # 30) is due to be denied as moot. An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 6, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[7] The Eleventh Circuit declined to announce such a rule in *Pourmoghani-Esfahani*, and no other precedent suggests such a right existed at the time of the incidents at issue in this case.